UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CYNTHIA CANADY,
                Plaintifs,

                                                  **Civil Action No:**_____

Vs.

ROBERT WILKIE,                                 **JURY TRIAL DEMANDED**
Secretary of the Department of Veterans Affairs of the
United States (in his official capacity)

                Defendant,

Comes now CYNTHIA CANADY ("Plaintiff"), by and through her attorneys, Cooper & Cooper, and files her Complaint against ROBERT WILKIE, an officer of the United States of America in his official capacity as Secretary of the Department of Veterans Affairs of the United States, ("Defendant"), alleges and states as follows:

## NATURE OF CASE

1. Plaintiff brings this civil action against Defendant for violations of: (a) Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e), and (b) the Family Medical Leave Act ("FMLA") (29 U.S.C. §§ 2601-2654);

2. This is an action for compensatory, punitive, and liquidated damages brought by Plaintiff seeking vindication for Defendant's blatant violations of Plaintiff's rights as an employee of the Veterans Administration pursuant to federal law.

3. Specifically, Plaintiff brings this action to seek redress for Defendant's creation of a hostile work environment based on race and sex discrimination from her supervisors' harassment and suspending and threatening to terminate her in retaliation for exercising her

1

rights under Title VII and the FMLA. As a result, Plaintiff has suffered and continues to suffer, significant emotional and monetary damages for which she now sues.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII, and FMLA.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e)(1), as all actions comprising the claims for relief occurred within this judicial district.

## DEMAND FOR A JURY TRIAL

6. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. At all relevant times herein, Plaintiff was and is an "employee" of the Department of Veterans Affairs at the Houston Veterans Affairs Regional Office located in the City of Houston, in the State of Texas, Plaintiff is a "person" entitled to protection as defined by Title VII and the FMLA.

Defendant, the Secretary of the Department of Veterans Affairs of the United States, and is an officer of the United States may be served by serving the Secretary of the Department of Veterans Affairs of United States and by serving a copy of the summons and the complaint by registered or certified mail to Defendant.

1. ROBERT WILKIE,
Secretary of the Department of Veterans Affairs of the United States
810 Vermont Ave., NW
Washington, D.C. 20420


2. United States Attorney General
U.S. Department of Justice
10th &  Constitutional Avenue, N.W.
Washington, D.C. 20503

3. United States Attorney for the Southern
District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002

1. At all relevant times herein, DEPARTMENT OF VETERANS AFFAIRS, Houston Regional Office, was and is a federal agency of the United States located at 6900 Almeda Rd, Houston, TX 77030

2. At all relevant times herein, DEPARTMENT OF VETERANS AFFAIRS was and is an "employer" within the meaning of Title VII and the FMLA.

## ADMINISTRATIVE REMEDIES

3. On or about March 22, 2018, Plaintiff timely contacted the EEO Office of the VA and filed an informal complaint of discrimination based on race and sex.

4. On or about July 16, 2018, Plaintiff timely filed a formal equal employment opportunity (EEO) complaint alleging officials employed at the VA Houston Regional Officediscriminated against her under Title VII and the FMLA.

5. On August 5, 2019, The VA Office of Employment Discrimination Complaint Adjudication issued a Final Agency Decision and issued a Right to File a Civil Action.(See Exhibit A.)This Complaint has been filed within 90 days of receipt of that notice.

6. Plaintiff hasfully complied with all prerequisites to jurisdiction in this Court under Title VII and the FMLA.

## BACKGROUND FACTS

7. The United States Department of Veterans Affairs (VA) is a federal Cabinet-level agency that provides near-comprehensive healthcare services to eligible military veterans at VA medical centers and outpatient clinics located throughout the country

8. The Veterans Benefits Administration (VBA) is an agency of the U.S. Department of Veterans Affairs. It is responsible for administering the Department's programs that provide financial and other forms of assistance to veterans, their dependents, and survivors.

9. The Houston VA Regional Office administers a variety of benefit services to veterans, service members, their families, and survivors throughout southern Texas.

## PLAINTIFF'S CLAIMS

### *Plaintiff's employment with the VA.*

10. Plaintiff has been a GS-12 Super Senior Veterans Service Representative for eight years; she has 25 years of federal service with 17 years as a Veterans Benefits Administration employee.

11. During her tenure, Plaintiff has held the following positions: Veteran Service Representative (VSR), Rating Veteran Service Representative (RVSR), Authorization Quality Review Specialist (AQRS), and her current position Super Senior Veteran Service Representative (SSVSR) in claim processing where she had the responsibility of authorizing claims filed by veterans of the United States military.

12. Additionally, Plaintiff has been responsible for training newly hired VSRs at the Veteran Benefit Administration academies and for mentoring and training employees within the Veteran Benefit Administration regional offices.

13. Plaintiff did not have any disciplinary actions taken against her during her tenure until the events detailed in this Complaint.

*<u>Plaintiff voices concerns at committee meeting and hostile work environment begins as a consequence.</u>*

14. On March 31, 2017, Plaintiff attended a training committee meeting to enhance the office's proficiency for the 2017 fiscal year. Plaintiff regularly teleworked from home but came to the office to attend the meeting.

15. Committee members were in an open discussion forum and it was understood that everyone present should have input about what they observed in their different areas. All committee members were encouraged to participate.

16. During the meeting, Plaintiff, during the open discussion forum voiced concern to the committee members about what she was experiencing and observing in the performance of her duties and how the VSR's with whom she regularly interacted were being disrespectful and harassing to her and others.

17. Plaintiff had emails to demonstrate that supervisors of VSRs were not intervening where appropriate and this demonstrated disrespect and harassment from the VSRs.

18. Upon hearing this information, Mr. James Hedge, Assistant Director of the Houston Regional VA Office, told Mr. Dirk Mancuso, the Assistant Service Center Manager, about the unacceptability of the disrespect by the VSRs, whom were under Mr. Mancuso's

purview, and asked him to investigate and correct the matter. Mr. Hedge made the remarks to Mr. Mancuso to others in the presence of other committee members.

19. The training committee meeting ended at noon on March 31, 2017, and Plaintiff went to lunch. When Plaintiff returned and hour later, she saw an email from her team supervisor, Ruthann Estrada, to come see her. Plaintiff immediately went to Ms. Estrada's office.

20. On arriving, Ms. Estrada appeared to be holding a document which she described as a report. Then Ms. Estrada proceeded to tell Plaintiff that her production numbers were not as high as the other SSVSRs.

21. Plaintiff advised Ms. Estrada that she had been traveling to teach and perform other duties in the furtherance of Agency business and not at her home-based computer authorizing claims.

22. Ms. Estrada then required Plaintiff to end telework from home and come into the office due to her lack of production.

23. Beginning in April 2017 and ongoing, Ms. Estrada began to closely scrutinize the Plaintiff's work product.

24. From April 2017 through December 2017, Plaintiff continued to perform her duties in an exemplary manner and conducted offsite training classes at Ft. Hood, TX and Baltimore, MD.

### *Plaintiff is transferred to a different team.*

25. On or about December 19, 2017, Ms. Estrada contacted Plaintiff while on holiday leave, and informed her that she was being moved from the promulgation team to the non-rated team effectively demoting her by the order of Mr. Mancuso effective December 26, 2017.

26. From December 26, 2017 through February 28, 2018, Plaintiff's new supervisor, Marco Benavidez, gave her no guidance or expectations on her performance, and she was left to learn the new position on her own.

27. Throughout the beginning of Plaintiff's tenure on the new team, Mr. Benavidez went out of his way to criticize and harass her.

28. On February 28, 2018, Plaintiff was harassed by Mr. Benavidez after she was ordered by him to work on a matter, then harassed and bullied by him verbally and in writing for doing so despite his orders.

29. On March 21, 2018, Mr. Benavidez harassed Plaintiff through an email that was copied to upper management. He admonished and falsely accused her of the lack of quality and volume of her work product and stated, "try to limit your time on your cell phone or in the hallway."

30. Plaintiff showed through documentation and data that Mr. Benavidez was incorrect, and he conceded to his mistake through an email to her but did not send it to the upper management officials he had previously copied. Plaintiff continued to feel harassed and distressed.

*Plaintiff files EEO complaint about discriminatory acts and retaliation begins.*

31. On March 22, 2018, Plaintiff filed an informal EEO complaint stating that she was experiencing a hostile work environment based on race and sex.

32. On April 3, 2018, soon after Plaintiff filed the EEO complaint, Plaintiff received a letter from Emile Dufrene, Veterans Service Center Manager, stating that she was being charged with Inaccurate Reporting of Regular Hours, and Inaccurate Reporting of Overtime

Hours due to the Employee Transaction Report (ETR). As a result, he was proposing that she be removed from government services and terminated.

33. On April 17, 2018, Plaintiff had been contemplating suicide due to the stress of the harassment she was experiencing and went to the emergency room of the VA hospital. Plaintiff was diagnosed as being in a major depressive state and was placed on leave immediately until May 2, 2019. Plaintiff requested FMLA through the VA's human resources department and was approve.

34. On April 17 and April 18, 2018, Mr. Benavidez contacted Plaintiff questioning her FMLA while she was on approved leave. On both days, Mr. Benavidez continued to contact Plaintiff by text when he had full knowledge that she was on medical leave. Plaintiff felt harassed and emotionally distressed by Mr. Benavidez's actions.

35. On April 20, 2018, A union representative contacted Plaintiff to relay a message from Mr. Hedge to ask her "if she wanted to drop her EEO complaint to stop digging a bigger hole for herself." The union representative stated that Plaintiff was also receiving a six-day suspension and warned that if the EEO complaint went to the Director's office, they would start digging for other stuff.

36. On May 29, 2018, Plaintiff received a certified letter from Mr. Dufrene stating that she was approved for 100% telework when she was still on FMLA leave. Since Plaintiff was still on FMLA leave and not working at all, this letter only served to aggravate her condition and cause more mental anguish.

**COUNT ONE**

*Plaintiff's Claim forRace and Sex Discrimination and Hostile Work Environment in violation of Title VII of the Civil Rights Act*

37. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38. At all times, Plaintiff was fully qualified for her position.

39. Plaintiff voiced her concerns about the performance of VSRs at a training committee meeting on March 31, 2017, that resulted in Mr. Mancuso receiving a mild reprimand by Mr. Hedge.

40. As a result of being embarrassed by an African American woman, Mr. Mancuso immediately enlisted the assistance of Ms. Estrada, whom it was common knowledge had a personal relationship with Mr. Mancuso,to begin scrutinizing her work productin order to harass Plaintiff.

41. On December 19, 2017, Mr. Mancuso continued his harassment of Plaintiff by moving her from the promulgation team to the non-rated team and effectively demoting her.

42. Mr. Mancuso also influenced Mr. Benavidez to see Plaintiff as a troublemaker and thereby causing Mr. Benavidez to participate in the harassment of Plaintiff through constantly questioning her decision making and making her appear to be incompetent to higher ranking managers.

43. At all times, Plaintiff was fully qualified for her position.

44. Mr. Mancuso would not have acted this way but for Plaintiff being an African American and a woman.

45. Plaintiff suffered damages as a result of Mr. Mancuso's, Ms. Estrada's, and Mr. Benavidez's discriminatory actions including emotional damages, plus costs and attorney's fees.

## COUNT TWO
*Plaintiff's Claim for FMLA Interference*

9

*In Violation of 29 U.S.C § 2615(a)(1)*

46. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47. At all times, Plaintiff was fully qualified for her position.

48. On April 17, 2018, Plaintiff was in a major depressive state and was properly placed on leave until May 2, 2019.

49. When Plaintiff went on FMLA leave, Mr. Benavidez purposely reached out to harass her when she was at her most vulnerable.

50. Subsequently, Mr. Benavidez unlawfully impeded Plaintiff's rights to her FMLA benefits when he harassed her when she was attempting to recover.

51. The conduct of Mr. Benavidez was a gross and blatant violation of the FMLA.

52. Plaintiff suffered damages as a result of Mr. Benavidez's unlawful actions including emotional damages, plus costs and attorney's fees.

**COUNT THREE**
*Plaintiff's Claim for FMLA Retaliation*
*In Violation of 29 U.S.C. § 2615(a)(2)*

53. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54. At all times, Plaintiff was fully qualified for her position.

55. When Plaintiff went on FMLA leave after suffering a major depressive episode, Mr. Benavidez openly question whether Plaintiff filed the necessary paperwork for taking FMLA leave after it had been approved by the VA's human resources office and purposely reached out to ask her about it in order to harass Plaintiff when she was at her most vulnerable.

56. Subsequently, Mr. Benavidez unlawfully retaliated against Plaintiff by impedingher rights to her FMLA benefits.

57. The temporal proximity between Plaintiff's exercise of her FMLA rights and Mr. Benavidez's harassing conduct give rise to an inference of retaliation.

58. The conduct of Mr. Benavidez during Plaintiff's FMLA leave was a gross and blatant violation of the FMLA.

59. Plaintiff suffered damages as a result of Mr. Benavidez's unlawful actions including emotional damages, plus costs and attorney's fees.

## COUNT FOUR
*Plaintiff's Claim for Retaliation in Violation of*
*Title VII of the Civil Rights Act*

60. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. At all times, Plaintiff was fully qualified for her position.

62. On March 22, 2018, Plaintiff filed an informal EEO complaint due to the discriminatory and harassing behavior of Mr. Benavidez, Ms. Estrada, and Mr. Mancuso.

63. On April 3, 2018, Plaintiff received a letter from Mr. Dufrene stating that she was being recommended for termination due to dubious charges against her.

64. The temporal proximity between Plaintiff's exercise of her Title VII rights and Defendant's adverse employment action against her gives rise to an inference of retaliation.

65. Defendant's purported reasons for recommending Plaintiff's removal from government services is entirely baseless and are a mere pretext for the Defendant's unlawful conduct.

66. Plaintiff suffered damages as a result of Defendant's unlawful and willful retaliatory actions, including lost wages, liquidated damages, plus costs and attorney's fees for which she now sues.

## COUNT FIVE
*Plaintiff's Claim for Retaliation in Violation of*
*Title VII of the Civil Rights Act*

67. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68. At all times, Plaintiff was fully qualified for her position.

69. On April 20, 2018, Mr. Hedge conveyed a message to Plaintiff through a union representative to drop the EEO claim that she filed. Plaintiff was given a six-day suspension and was threatened that she would be "digging a bigger hole for herself if she continued with her complaint."

70. The purported reasons for her six-day suspension were entirely baseless and are a mere pretext for the Defendant's unlawful conduct.

71. Mr. Hedge threatened Plaintiff that if she continued her claim, which is her right under Title VII, she would suffer adverse action.

72. Plaintiff suffered damages as a result of Mr. Hedge's unlawful and willful retaliatory actions, including lost wages, liquidated damages, plus costs and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request judgment as follows:

a) Award Plaintiff her past loss of wages and benefits, plus interest;

b) Award Plaintiff liquidated damages;

c) Award Plaintiff compensatory and punitive damages;

d) Award Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

e) Grant Plaintiffs such additional or alternative relief as the Court deems just and proper.

Respectfully submitted,

COOPER & COOPER

/s/ Gordon R. Cooper, II
Gordon R. Cooper, II.
Cooper & Cooper
3620 South MacGregor Way
Houston, TX  77021-1504
(713) 747-1446
Gordon@gordonrcooperii.com